**OPINION ON REMAND**



ATTORNEY FOR APPELLANT

Jessica R. Merino
Merino Law Firm, PC
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alberto Baiza Rodriguez, *Appellant-Petitioner,* | December 14, 2018 |
| | Court of Appeals Case No. 20A03-1704-CR-724 |
| v. | Appeal from the Elkhart Superior Court |
| State of Indiana, *Appellee-Respondent* | The Honorable David C. Bonfiglio, Judge |
| | Trial Court Cause No. 20D06-1503-F6-264 |

**Crone, Judge.**

# Case Summary

[1]     In our prior opinion in this case, *Rodriguez v. State*, 91 N.E.3d 1033 (Ind. Ct. App. 2018), *trans. granted*, we held that the trial court erred in ruling that Alberto Baiza Rodriguez had waived his right to seek modification of his fixed sentence imposed pursuant to a plea agreement in 2016 for crimes committed in 2015. We based our holding on a 2014 statutory amendment which unambiguously provides that "[a] person may not waive the right to sentence modification under this section as part of a plea agreement." Ind. Code § 35-38-1-17(l) (2014). Our supreme court granted transfer. The court did not hold that our interpretation of the statute was erroneous and affirm the trial court's ruling; instead, the court remanded with instructions to reconsider our holding in light of the legislature's 2018 amendments to Indiana Code Sections 35-38-1-17 and 35-35-1-2.

[2]     We invited the parties to submit supplemental materials, which they did. Rodriguez argues that the 2018 amendments are not intended to apply retroactively, and, even if they were, such an application would unconstitutionally impair his contractual rights under his plea agreement with the State. We agree with Rodriguez. Therefore, we reaffirm our original holding, reverse the trial court's denial of Rodriguez's motion to modify his sentence, and remand for further proceedings consistent with this opinion.

# Facts and Procedural History

[3] Based on a March 2015 incident, the State charged Rodriguez with several offenses and with being a habitual vehicle substance offender. In January 2016, Rodriguez and the State entered into a written plea agreement in which Rodriguez agreed to plead guilty to all but one of the charges and serve seventy-two months in the Department of Correction on work release, and the State agreed to dismiss the remaining charge and not file additional charges. The trial court accepted the agreement and sentenced Rodriguez accordingly.

[4] In January 2017, Rodriguez filed a motion to modify his sentence on the basis of family hardship and asserted that the then-current version of Indiana Code Section 35-38-1-17(e) permitted the trial court to modify his remaining sentence to home detention:

> At any time after:
>
> (1) a convicted person begins serving the person's sentence; and
>
> (2) the court obtains a report from the department of correction concerning the convicted person's conduct while imprisoned;
>
> the court may reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing. The court must incorporate its reasons in the record.

Rodriguez asked the trial court to order a report from the work release program and set the matter for hearing, which it did.

[5] At the hearing, the trial court acknowledged that the work release report was "very outstanding[,]" Tr. Vol. 2 at 7, but ultimately it issued an order concluding that it did "not have the authority to modify the sentence because the court accepted the parties' plea agreement which requires the defendant to serve the sentence in Work Release." The court referenced Indiana Code Section 35-35-3-3(e), which states, "If the court accepts a plea agreement, it shall be bound by its terms." The court also quoted the then-current version of Indiana Code Section 35-38-1-17(l):

> A person may not waive the right to sentence modification under this section as part of a plea agreement. Any purported waiver of the right to sentence modification under this section in a plea agreement is invalid and unenforceable as against public policy. *This subsection does not prohibit the finding of a waiver of the right to sentence modification for any other reason*, including failure to comply with the provisions of this section[, which limit the number of times a person may file a petition for sentence modification without the consent of the prosecuting attorney].

(Emphasis added.) This provision had been added to the statute in 2014. The court concluded that the italicized phrase "applies to the specific terms of a plea agreement that the court has accepted[,]" and thus "entering into a binding plea agreement waives the right to seek or receive a modification of sentence."

[6] Rodriguez appealed, arguing that the trial court erred in ruling that he had waived his right to seek modification of his sentence. We addressed his argument as follows:

It is hornbook law that a plea agreement is contractual in nature, binding both the defendant and the State. *E.g.*, *St. Clair v. State*, 901 N.E.2d 490, 492 (Ind. 2009). "Bargaining between the State and a pleading defendant will have produced for court consideration an agreement that either specifies a precise penalty or leaves some or all of the specifics to the judgment of the trial court." *Id.* at 493. "[I]t is up to the trial court to accept or reject the plea agreement as filed." *Badger v. State*, 637 N.E.2d 800, 802 (Ind. 1994). As noted above, once a trial court accepts a plea agreement, it is bound by its terms. Ind. Code § 35-35-3-3(e).

In years past, the legislature placed significant limitations on a trial court's authority to modify a sentence imposed after a trial. A trial court could reduce or suspend a defendant's sentence within the first three hundred sixty-five days (commonly known as "shock probation"), but after that point most reductions or suspensions were subject to approval of the prosecuting attorney. *See* Ind. Code § 35-38-1-17 (formerly 35-38-1-23) (historical statutes). With respect to plea agreements containing a fixed sentence, our supreme court held as follows:

> Once it has accepted a plea agreement recommending a specific sentence, … the terms of the agreement constrain the discretion the court would otherwise employ in sentencing. Even after a sentence has been imposed pursuant to a plea agreement containing a recommendation of a specific term of years, that sentence may not be altered upon subsequent motion, such as under Ind. Code § 35-38-1-23 for "shock probation," unless the agreement contained a specific reservation of such authority for the trial judge. [*State ex rel. Goldsmith v. Marion Cty. Super. Ct.*, 275 Ind. 545, 551-52, 419 N.E.2d 109, 114 (1981)].

*Goldsmith* and its progeny each uphold the principle

that a deal is a deal. Once it has accepted a plea agreement, the sentencing court possesses only that degree of discretion provided in the plea agreement with regard to imposing an initial sentence or altering it later.

*Pannarale v. State*, 638 N.E.2d 1247, 1248 (Ind. 1994).

Since 2014, however, the legislature has gradually relaxed the restrictions on sentence modification, allowing trial courts to reduce or suspend sentences for nonviolent offenders "[a]t any time" without prosecutorial approval in certain circumstances. Ind. Code § 35-38-1-17(e), -(j). The legislature also added what is now Section 35-38-1-17(l), which, as mentioned above, provides that "[a] person may not waive the right to sentence modification under this section as part of a plea agreement" and that "[a]ny purported waiver of the right to sentence modification under this section in a plea agreement is invalid and unenforceable as against public policy." Section 35-38-1-17(l) also provides that it "does not prohibit the finding of a waiver of the right to sentence modification for any other reason, including failure to comply with the provisions" of the statute.

In this case, Rodriguez's plea agreement contained a specific reservation of authority for the trial court to modify his sentence, but only in the event that he was incarcerated, which he was not…. The trial court essentially concluded that by entering into a plea agreement with a fixed sentence to be served on work release, Rodriguez waived the right to modification of that sentence. But that is precisely what Section 35-38-1-17(l) prohibits in no uncertain terms as a violation of public policy; it does not distinguish between implicit or explicit waivers, and we may not read such a distinction into the statute. [*N.D.F. v. State*, 775 N.E.2d 1085, 1088 (Ind. 2002)].

The State argues,

> In plea bargains, the State is often agreeing to dismiss other (often, more serious) charges or to forego filing additional charges in exchange for the certainty of a definite sentence or definite limits on sentencing options that ensure the defendant will receive no less than a certain sentence. If that fixed sentence can be modified at any time, or if the negotiated limits on sentencing discretion can be ignored at any time, then the agreement is purely illusory, and the State is not receiving the benefit for which it bargained. The State will be unwilling to enter into plea agreements if they will not be enforced.

Appellee's Br. at 12. We acknowledge the State's concern, but as another panel of this Court stated in response to a similar argument in a recent case,

> the statute says what it says, and we are bound to interpret and apply statutes in a way that fulfills the legislature's intent. Unless and until the General Assembly clarifies the statute at issue, it clearly and unambiguous[ly] states that offenders "may not waive the right to sentence modification … as part of a plea agreement."

*State v. Stafford*, 86 N.E.3d 190, 193 (Ind. Ct. App. 2017) (quoting Ind. Code § 35-38-1-17(l)), *trans. granted*.

The State also points to Section 35-35-3-3(e), which provides that a trial court "shall be bound" by the terms of a plea agreement that it accepts, and argues that if the legislature "had intended to change this law and allow modifications of fixed-sentence pleas, it would have said so directly." Appellee's Br. at 13-14. We

think that the legislature said so directly in Section 35-38-1-17(l). The State also mentions Section 35-38-1-17(e), which states that a court "may reduce or suspend [a] sentence and impose a sentence that the court was authorized to impose at the time of sentencing"; the State contends that "in a case involving a fixed-sentence plea, the only sentence that the court 'was authorized to impose at the time of sentencing' is the precise sentence provided for in the plea agreement." Appellee's Br. at 11. As the *Stafford* court said, "[w]e cannot agree with the State's tortured interpretation of the plain statutory language." 86 N.E.3d at 193.

> [A]s to what sentence the trial court is "authorized" to impose at the time of sentencing, that authorization is bound not only by the language of the plea agreement but also by the law. And the General Assembly has quite clearly stated that, as of July 2014, "[a] person may not waive the right to sentence modification under this section as part of a plea agreement." I.C. § 35-38-1-17(l). Therefore, following the enactment of these statutory amendments, the legislature has declared that trial courts are *not authorized* to impose a sentence that purports to waive the defendant's right to a later modification.

*Id*.

Based on the foregoing, we believe that Sections 35-35-3-3(e), 35-38-1-17(e), and 35-38-1-17(l) may be harmonized to preserve a defendant's right to modification of a fixed sentence imposed under a plea agreement.… If the legislature disagrees with our interpretation of Section 35-38-1-17(l), then it may clarify the statute accordingly. We hold that modification of Rodriguez's sentence is permissible under Section 35-38-1-17(l), and therefore we reverse and remand for further proceedings consistent with this opinion.

*Rodriguez*, 91 N.E.3d at 1036-38 (footnotes omitted).

[7] The State filed a petition for transfer, which our supreme court granted in March 2018, thereby vacating our opinion. On July 12, the court issued a two-paragraph order in which it remanded this case for reconsideration "in light of" the legislature's most recent amendments to Sections 35-38-1-17 and 35-35-1-2, which became effective July 1, 2018. *Rodriguez v. State*, 100 N.E.3d 696, 696 (Ind. 2018).[1] The court also mentioned that Section 35-38-1-17 "provides that the section applies to a person who commits an offense or is sentenced before July 1, 2014, notwithstanding Indiana Code section 1-1-5.5-21." *Id*.[2] Although the court vacated our opinion, it did not expressly disagree with or disapprove of our interpretation of the 2014 amendments to Section 35-38-1-17.

[8] Both parties accepted our invitation to submit supplemental materials, and we thank them for their submissions. Having reconsidered our holding in light of the 2018 legislative amendments, as well as the parties' supplemental briefs, we reaffirm that holding for the reasons given below.

---

[1] The court issued a similar order in *Stafford*. 100 N.E.3d 696 (Ind. 2018).

[2] Indiana Code Section 1-1-5.5-21(a) states,

> A SECTION of P.L. 158-2013 or P.L. 168-2014 [both of which amended Section 35-38-1-17] does not affect:
> (1) penalties incurred;
> (2) crimes committed; or
> (3) proceedings begun;
> before the effective date of that SECTION of P.L. 158-2013 or P.L. 2014. Those penalties, crimes, and proceedings continue and shall be imposed and enforced under prior law as if that SECTION of P.L.158-2013 or P.L.168-2014 had not been enacted.

[9] For context, we set out the relevant parts of Sections 35-38-1-17 and 35-35-1-2, with the 2018 amendments italicized:

> (e) At any time after:
>
>> (1) a convicted person begins serving the person's sentence; and
>>
>> (2) the court obtains a report from the department of correction concerning the convicted person's conduct while imprisoned;
>
> the court may reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing. *However, if the convicted person was sentenced under the terms of a plea agreement, the court may not, without the consent of the prosecuting attorney, reduce or suspend the sentence and impose a sentence not authorized by the plea agreement.* The court must incorporate its reasons in the record.
>
> ….
>
> (l) A person may not waive the right to sentence modification under this section as part of a plea agreement. Any purported waiver of the right to sentence modification under this section in a plea agreement is invalid and unenforceable as against public policy. This subsection does not prohibit the finding of a waiver of the right to:
>
>> *(1) have a court modify a sentence and impose a sentence not authorized by the plea agreement, as described under subsection (e); or*

> *(2)* sentence modification for any other reason, including failure to comply with the provisions of this section.

Ind. Code § 35-38-1-17 (2018) (emphases added).

> (a) The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first determining that the defendant:
>
>> (1) understands the nature of the charge against the defendant;
>>
>> ....
>>
>> (5) has been informed that if:
>>
>>> (A) there is a plea agreement as defined by IC 35-31.5-2-236; and
>>>
>>> (B) the court accepts the plea;
>>
>> the court is bound by the terms of the plea agreement *at the time of sentencing and with respect to sentence modification under IC 35-38-1-17.*

Ind. Code § 35-35-1-2 (2018) (emphasis added). In sum, the 2018 amendments provide that a sentence imposed "under the terms of a plea agreement" may not be modified to "a sentence not authorized by the plea agreement" without the prosecuting attorney's consent, which was not the case between July 1, 2014, and July 1, 2018.

[10] Rodriguez posits that "[t]he Supreme Court's remand for reconsideration … seems to suggest that the General Assembly's changes to the law may have some retroactive effect on this Court's prior ruling[,]" and he correctly observes that, "[a]s a general rule, changes in law apply prospectively only unless the General Assembly expressly provided otherwise." Appellant's Supp. Br. at 4, 5. *See Diaz v. State*, 753 N.E.2d 724, 728 n.5 (Ind. Ct. App. 2001) ("Generally, amendatory acts are given prospective effect only, unless retrospective application is expressly provided therein."), *trans. denied*; *see also Sales v. State*, 723 N.E.2d 416, 421 (Ind. 2000) ("Subsequent legislation does not serve retroactively to amend legislation or declare the intent of a prior General Assembly.").[3] Rodriguez further observes that "[e]ven when [amendments] are remedial, retroactive application is disfavored when existing rights would be

---

[3] In arguing that the legislature intended for the 2018 amendments to apply retroactively to Rodriguez, the State asserts that their enactment only several months after *Stafford* is "remarkably similar to the legislature's statutory amendments regarding untimely amendments to a charging information" in response to our supreme court's opinion in *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007). Appellee's Supp. Br. at 10. In *Hurst v. State*, 890 N.E.2d 88, 95 (Ind. Ct. App. 2008), *trans. denied*, this Court found that the legislature intended for those amendments to apply retroactively, even though it "did not expressly provide" for that. We need not address this argument because even if we were to conclude that the legislature intended for the 2018 amendments to apply retroactively, we would find such an application unconstitutional as to Rodriguez for the reasons given below.

infringed." *Id*. (quoting *Brane v. Roth*, 590 N.E.2d 587, 590 (Ind. Ct. App. 1992), *trans. denied*). He argues that applying the 2018 amendments to Sections 35-38-1-17 and 35-35-1-2 retroactively to plea agreements made between July 1, 2014, and July 1, 2018, "would infringe on a plea bargainer's right to petition for a modification as it existed under the modification statute at the time." *Id*. "The challenger to the validity of a statute must overcome a presumption that the statute is constitutional. That party bears the burden of proving otherwise." *Johnson v. State*, 38 N.E.3d 686, 690 (Ind. Ct. App. 2015) (citation omitted). We conclude that Rodriguez has met that burden here.

[11]  Plea agreements are contracts, and contract law principles provide guidance in considering the agreement. *Fowler v. State*, 977 N.E.2d 464, 467 (Ind. Ct. App. 2012), *aff'd on reh'g*, 981 N.E.2d 623 (2013), *trans. denied*. "Generally, unless a contract provides otherwise, all applicable law in force when the agreement is made impliedly forms a part of the agreement without any statement to that effect." *Id*. at 468. The applicable law in force when Rodriguez entered his plea agreement with the State included the 2014 amendments to Section 35-38-1-17, which we have held allow the modification of fixed sentences. "Article I, Section 10 of the United States Constitution provides that no state shall pass any law impairing the obligations of contracts." *Mainstreet Prop. Grp., LLC v.*

*Pontones*, 97 N.E.3d 238, 244 (Ind. Ct. App. 2018), *trans. denied*.[4] "It long has been established that the Contract Clause limits the power of the States to modify their own contracts as well as to regulate those between private parties." *Id*. (quoting *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 17 (1977)); *see also Carr v. State ex rel. Du Coetlosquet*, 127 Ind. 204, 207, 26 N.E. 778, 779 (1891) ("The principle that a state, in entering into a contract, binds itself substantially as an individual does under similar circumstances, necessarily carries with it the inseparable and subsidiary rule that it abrogates the power to annul or impair its own contract.").

[12] The federal constitution's "Contract Clause prohibits changes in law only if they operate 'as a substantial impairment of a contractual relationship.'" *Elliott v. Bd. of Sch. Trs. of Madison Consol. Sch.*, 876 F.3d 926, 932 (7th Cir. 2017) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)), *cert. denied* (2018). "This standard balances individual rights to organize personal affairs against the States' 'necessarily reserved' sovereign power to protect the general welfare." *Id*. (quoting *U.S. Tr. Co.*, 431 U.S. at 21). "The Supreme Court has harmonized these interests by applying a two-step analysis, asking first whether a change in state law has substantially impaired a contractual relationship, and

---

[4] "Similarly, Article 1, Section 24 of the Indiana Constitution provides that no law impairing the obligation of contracts shall ever be passed." *Mainstreet Prop. Grp., LLC*, 97 N.E.3d at 244. Because we hold that retroactive application of the 2018 amendments would be unconstitutional as to Rodriguez under the federal constitution, we need not address his state constitutional argument.

second whether the impairment is reasonable and necessary for a legitimate public purpose." *Id*. (citation omitted).

Regarding the first step, we must consider "(1) whether there is a contractual relationship; (2) whether a change in law impairs that contract; and (3) whether the impairment is substantial." *Id*. The answer to (1) is obviously yes. As for (2), assuming for argument's sake that the 2018 amendments apply retroactively, they would impair Rodriguez's plea agreement by requiring prosecutorial consent for modification of his sentence, whereas none was required when the plea agreement was made.

And as for (3), we note that "substantial impairment does not require a complete destruction of the contractual relationship." *Id*. at 934. "The issue is whether the impairment disrupts reasonable contractual expectations." *Id*. "The Supreme Court's decisions under the Contract Clause show that reliance interests are key to this inquiry." *Id*. "When a State makes an express commitment to private businesses or individuals, reliance may be highly justified." *Id*. at 937. We must make the following inquiries: (1) whether the impaired term was "a 'central undertaking' of the bargain such that it 'substantially induced'" Rodriguez to enter the plea agreement; and (2) whether the change in law was foreseeable, "meaning that the risk of change was reflected in the original contract[.]" *Id*. at 934 (quoting *City of El Paso v. Simmons*, 379 U.S. 497, 514 (1965)).

Regarding the first inquiry, Rodriguez argues,

the plea agreement called for 72 months in the IDOC to be served on Work Release. Although this Court previously stated that Rodriguez was not incarcerated as a result of his plea, a 72-month term of incarceration at the IDOC is contemplated in the plea, and as the Court noted, the plea discusses a modification. Thus, the modification statute was invoked in Rodriguez's agreement, and by "knowingly" entering his plea, Rodriguez executed his plea agreement with the understanding that the plain language of I.C. § 35-38-1-17 gave him a right to petition the court for a sentence modification. Regardless of whether Rodriguez was incarcerated as a result of his plea, the express term in his agreement squarely places the prior version of the modification statute within his contract expectations, and Rodriguez was entitled to rely on the continuing application of the law.

Appellant's Supp. Br. at 9-10 (citations omitted). And regarding the second inquiry, Rodriguez argues that although he "could have foreseen that the General Assembly would change the law, he could not have foreseen a retroactive application. 'One can anticipate that any state law may change in the future, but retroactive application to impair existing contract rights and reliance interests is another question.'" *Id.* at 10 (quoting *Elliott*, 876 F.3d at 936). We find both arguments persuasive.

[16] "Still, not even all substantial impairments of contracts are unconstitutional. If the impairment is both reasonable and necessary for an important public purpose, then the law does not violate the Contract Clause." *Elliott*, 876 F.3d at 936. "Courts owe at least some deference to legislative determinations of reasonableness and necessity. The degree of deference differs depending on the severity of the impairment and on the State's self-interest." *Id.* at 936-37

(citations omitted). "When a State impairs its own contracts, the impairment must be 'clearly necessary' or 'essential,' not merely convenient or expedient." *Id.* at 938 (quoting *Simmons*, 379 U.S. at 516, and *U.S. Trust Co.*, 431 U.S. at 29). "A substantial impairment is not necessary if the State could achieve the goal through a less drastic modification' or 'without modifying' the contract 'at all.'" *Id.* (quoting *U.S. Trust Co.*, 431 U.S. at 29).

[17]  Rodriguez contends,

> Although the General Assembly has amended the statute to reflect their present intentions, the prior version cannot be viewed as a mere drafting error. The language was plain, and individuals relied upon its plain meaning when entering into fixed-sentence pleas. Retroactive application is neither necessary nor reasonable when applied to [] plea agreements entered under the 2014 version of the modification statute because the State could have protected [itself] via contract [i.e., by stipulating conditions in a plea offer by which a defendant may seek a modification] ….

Appellant's Supp. Br. at 11. We find this argument persuasive as well and therefore hold that retroactive application of the 2018 amendments as to Rodriguez would violate the federal constitution's Contract Clause.

[18]  On a more basic level, regardless of whether retroactive application of the 2018 amendments would substantially impair Rodriguez's contractual rights under the plea agreement, it would be fundamentally unfair. As the Seventh Circuit Court of Appeals stated in *Elliott*, "It is not fair to change the rules so substantially when it is too late for the affected parties to change course." 876

F.3d at 935; *see also Woody's Grp., Inc. v. City of Newport Beach*, 183 Cal. Rptr. 3d 318, 330 (Cal. Ct. App. 2015) ("[C]hanging the rules in the middle of the game does not accord with fundamentally fair process."). Based on the foregoing, we reaffirm our prior holding, reverse the trial court's denial of Rodriguez's motion to modify his sentence, and remand for further proceedings consistent with this opinion.

Reversed and remanded.

Mathias, J., concurs.

Rucker, S.J., dissents with separate opinion.

Rucker, S.J., dissenting.

For the reasons expressed in my earlier dissenting opinion, I respectfully dissent from the majority's opinion in the instant case. *See Rodriguez v. State*, 91 N.E.3d 1033, 1038-40 (Ind. Ct. App. 2018).