

FILED
Mar 19 2026, 8:40 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Keenah Taylor,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

March 19, 2026

Court of Appeals Case No.
25A-CR-2032

Appeal from the Marion Superior Court

The Honorable Angela Dow Davis, Judge

Trial Court Cause No.
49D27-2409-F3-25405

---

**Opinion by Chief Judge Tavitas**
Judges Weissmann and Foley concur.

**Tavitas, Chief Judge.**

## Case Summary

[1] Keenah Taylor appeals his convictions and sentence for rape, a Level 3 felony; robbery, a Level 5 felony; and criminal confinement, a Level 5 felony. After Taylor made multiple calls to the victim in violation of a no contact order, the victim did not appear at trial, and the trial court admitted the victim's deposition and statements to law enforcement into evidence. On appeal, Taylor challenges the trial court's admission of these statements by the victim, the sufficiency of the evidence to support his rape conviction, and the trial court's denial of pretrial good time credit. We conclude that the trial court properly admitted the victim's deposition and statements to law enforcement, and the evidence is sufficient to sustain Taylor's conviction for rape. The State concedes, however, that the trial court was statutorily required to hold a hearing regarding the deprivation of Taylor's pretrial good time credit and failed to do so. The State, thus, has waived its opportunity to object to Taylor's pretrial good time credit. Accordingly, we affirm in part, reverse in part, and remand with instructions that the trial court award Taylor pretrial good time credit.

## Issues

[2] Taylor raises three issues, which we restate as:

> I.   Whether the trial court abused its discretion by admitting the victim's deposition and statements to law enforcement.

II. Whether the evidence is sufficient to sustain Taylor's conviction for rape.

III. Whether the trial court abused its discretion by failing to hold a hearing before depriving Taylor of pretrial good time credit.

## Facts

[3] Taylor and L.D. were previously in a dating relationship, but in 2024, the relationship ended. In August 2024, Taylor appeared at L.D.'s residence and knocked on the door. When L.D. answered the door, she discovered Taylor, who was angry about something L.D. posted on Facebook. Taylor immediately began screaming and yelling at L.D. and punched L.D.'s face. L.D. tried to calm Taylor down and then ran into her bedroom. Taylor followed L.D. and began kicking and stomping on her. L.D. retreated into her closet, but Taylor followed and continued hitting her. Taylor then told L.D., "Get your punk a** in here," and "I wanna get off." Ex. Vol. I p. 122. L.D. said, "No. You know I don't mess with you like that any more." *Id.* L.D., however, performed oral sex "just to calm him down just so he could just leave." *Id.* at 123. Taylor slapped L.D. twice during the oral sex. Taylor stopped the oral sex, started crying, took L.D.'s phone, and then left her residence.

[4] Officer Brian Nall with the Indianapolis Metropolitan Police Department arrived at L.D.'s residence in response to a 911 call. Officer Nall found that L.D. was "extremely upset" and had "visible injuries." Tr. Vol. II p. 20. L.D.'s

residence was in "disarray" with doors opened and "items strewn about." *Id.* at 23. L.D. told Officer Nall that Taylor beat her, kicked her, stomped on her, and made her "suck his d\*\*k." State's Ex. 1 at 4:36. When asked if Taylor threatened her, L.D. said that Taylor punched her on her face, "made [her] do it," and threatened to kill her if she contacted the police. *Id.* at 6:06.

[5] A sexual assault nurse examiner ("SANE") examined L.D. at Eskenazi Hospital's Center of Hope. L.D. was "scared, she was crying, [and] she was in a lot of pain." Tr. Vol. II p. 61. L.D. told the SANE that Taylor said, "get over here right now and give me some head." Tr. Vol. II p. 54. Taylor kept hitting L.D. and said, "You better do it right." *Id.* The examination revealed that L.D. had cracked ribs on both sides, a black eye, a bite mark, extensive bruising, and was "sore all over." Ex. Vol. I p. 130.

[6] On September 3, 2024, the State charged Taylor with rape, a Level 3 felony; robbery, a Level 3 felony; criminal confinement, a Level 5 felony; intimidation, a Level 6 felony; and two counts of battery, Class A misdemeanors. The trial court issued an order prohibiting Taylor from contacting L.D.

[7] L.D.'s deposition was taken on December 19, 2024. When asked during the deposition whether she felt she had a choice about giving Taylor oral sex, L.D. responded, "I did it because I felt like in that situation that I'm like I don't know if - - if this can escalate worser [sic], or if I do this, would it initially – would it calm him down?" Ex. Vol. I p. 132. She indicated that she did not want to give Taylor oral sex. *Id.* at 140.

[8] A bench trial was set for April 24, 2025. Between March 19, 2025, and April 24, 2025, Taylor made nearly two dozen calls to L.D. using Taylor's assigned jail PIN number. On April 24, 2025, the day of the scheduled bench trial, Taylor called L.D. at 3:41 a.m., and L.D. did not appear for the trial. The trial court advised Taylor to immediately stop calling L.D. and continued the bench trial to May 15, 2025. Taylor called L.D. again using a jail PIN number belonging to someone else and said, "They postponed until May the 15th, you hear me? May. Hey, do the same thing, you hear me?" Appellant's App. Vol. II p. 113. Between April 24, 2025, and May 15, 2025, Taylor made sixteen additional calls to L.D. encouraging L.D. to not participate in the May trial. The May bench trial was later rescheduled to June 26, 2025, due to a medical emergency, and Taylor continued calling L.D.

[9] On June 26, 2025, L.D. did not appear for the bench trial. The State filed a motion for unavailability and forfeiture by wrongdoing pursuant to Indiana Evidence Rule 804(b)(5). The State reported that it had made multiple unsuccessful attempts to secure L.D.'s attendance at the bench trial. The State argued that the admission of L.D.'s statements would not violate the constitutional right to confrontation because "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." Appellant's App. Vol. II p. 113 (citing *Crawford v. Washington*, 541 U.S. 36 (2004)).

[10] Taylor conceded that L.D. was "unavailable" but did not concede "forfeiture by wrongdoing." Tr. Vol. II p. 11. The trial court granted the State's motion

and found forfeiture by wrongdoing. The trial court found that L.D.'s deposition was admissible. As for L.D.'s other statements, the trial court found they would be inadmissible unless hearsay exceptions applied. Regarding the body camera recording of L.D.'s statements to Officer Nall, Taylor objected, and the trial court overruled the objection and admitted the recording based on "forfeiture by wrongdoing."[1] *Id.* at 26.

[11] The trial court found Taylor guilty of rape, a Level 3 felony; robbery, a Level 5 felony, as a lesser included offense; criminal confinement, a Level 5 felony, and battery, a Class A misdemeanor, but not guilty of intimidation and one of the battery charges. The trial court did not sentence Taylor on the battery guilty finding.[2]

[12] Taylor was sentenced to six years in the Department of Correction with 325 days executed in the Department of Correction, 770 days executed on community corrections home detention, and three years of probation. The trial court did not give Taylor good time credit for his pretrial detention because he

---

[1] Taylor objected to the Center of Hope records on grounds that they were not properly certified, which the trial court overruled. Taylor did not object to the admission of L.D.'s statements to the SANE on hearsay grounds, and Taylor makes no argument regarding L.D.'s statements to the SANE on appeal.

[2] Although the abstract of judgment states "conviction merged" regarding the battery guilty finding, our review of the record does not reveal that the trial court actually entered judgment of conviction on the battery guilty finding. Appellant's App. Vol. II p. 146; *see, e.g.*, *Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) (noting that "a defendant's constitutional rights are violated when a court enters judgment twice for the same offense, but not when a defendant is simply found guilty of a particular count").

failed to follow the trial court's orders regarding the no contact order. Taylor now appeals.

## Discussion and Decision

### I. The trial court did not abuse its discretion by admitting L.D.'s deposition or her statements to Officer Nall.

[13] Taylor first challenges the trial court's admission of L.D.'s deposition and L.D.'s statements to Officer Nall. We review challenges to the admission of evidence for an abuse of the trial court's discretion. *Combs v. State*, 168 N.E.3d 985, 990 (Ind. 2021). We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). "The effect of an error on a party's substantial rights turns on the probable impact of the impermissible evidence upon the jury in light of all the other evidence at trial." *Gonzales v. State*, 929 N.E.2d 699, 702 (Ind. 2010); *see* Ind. Trial Rule 61; Ind. Appellate Rule 66(A). "[W]hen a defendant contends that a constitutional violation has resulted from the admission of evidence, the standard of review is de novo." *Scott v. State*, 139 N.E.3d 1148, 1153 (Ind. Ct. App. 2020), *trans. denied.*

[14] On appeal, Taylor argues that the admission of L.D.'s deposition and her statements to Officer Nall were inadmissible under Indiana Evidence Rule 804(b)(5) and violated Taylor's rights to confrontation under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the

Indiana Constitution.[3] Our Court has noted that "the forfeiture by wrongdoing doctrine under the Confrontation Clause and the hearsay exception are very similar in theory." *Scott*, 139 N.E.3d at 1155. And Indiana Evidence Rule 804(b)(5) "incorporates the forfeiture by wrongdoing doctrine." *Quiroz v. State*, 265 N.E.3d 574, 580 (Ind. Ct. App. 2025).

## A. Indiana Evidence Rule 804

[15]  We begin by addressing the admissibility of the statements under Evidence Rule 804(b)(5), which provides that the following is not "excluded by the hearsay rule if the declarant is unavailable as a witness": "A statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness for the purpose of preventing the declarant from attending or testifying."

[16]  At trial and now on appeal, Taylor does not challenge L.D.'s unavailability. Instead, Taylor argues that L.D.'s unavailability was not due to Taylor's wrongdoing. But "[w]e may infer a defendant's intent to silence a witness 'from a defendant's conduct and the natural consequences thereof.'" *Doyle v. State*, 223 N.E.3d 1113, 1121 (Ind. Ct. App. 2023) (quoting *Smoots v. State*, 172 N.E.3d 1279, 1287 (Ind. Ct. App. 2021)). "The timing of a defendant's actions is probative of his or her intent on this issue." *Id.* at 1122. The State must only

---

[3] The parties make no argument that L.D.'s statements to Officer Nall were admissible under other Rules of Evidence.

show that "the defendant was motivated at least partially by a desire to silence the witness with his wrongdoing." *Carr v. State*, 106 N.E.3d 546, 554 (Ind. Ct. App. 2018), *trans. denied*. "The State was required to establish the exception by a preponderance of the evidence." *Id.*

[17] L.D. initially cooperated in the prosecution of Taylor; she informed law enforcement of Taylor's actions, and she submitted to a deposition just a few months later in December 2024. A few weeks before the April 2025 trial date, Taylor began calling L.D. from the jail. The focus of the calls was Taylor "telling [L.D.] what to do in relation to [the] bench trial and not appearing." Tr. Vol. II p. 7. Taylor told L.D., "do not appear. This is the date, this is the time, go to sleep. Don't answer the door, they're going to try to call you." *Id.* After the April 2025 trial date was reset for May 2025, Taylor started calling L.D. again as the May trial approached. The May trial was reset for June 2025 due to a medical emergency, and the calls continued. Taylor called L.D. more than forty times, and L.D. failed to appear for the June 2025 bench trial. Despite this evidence, Taylor claims that L.D. did not appear for health reasons and her desire not to relapse after undergoing cancer treatments.

[18] L.D. told prosecutors that she was not going to appear at the first scheduled bench trial because of her health and her desire not to have a relapse of her cancer. This explanation, however, came after Taylor had already called L.D. almost two dozen times and told her not to appear at the first scheduled bench trial. As the State notes, Taylor had already severely beaten and sexually assaulted L.D. just for sending a Facebook message to a friend. We cannot find

that the trial court abused its discretion by finding that L.D.'s absence at trial was due to Taylor's wrongdoing. *See, e.g.*, *Doyle*, 223 N.E.3d at 1122 (holding that "there was sufficient evidence to establish that it was Doyle's communications that caused Sweet's absence"). Taylor engaged in wrongdoing that was intended to, and did, procure L.D.'s unavailability as a witness at Taylor's bench trial. Accordingly, L.D.'s statements during her deposition and her statements to Officer Nall were admissible pursuant to Indiana Evidence Rule 804(b)(5).[4]

## B. Sixth Amendment to the United States Constitution

[19]     Next, Taylor claims that his rights under the Sixth Amendment were violated by the admission of L.D.'s statements. The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "This right allows the admission of an absent witness's testimonial out-of-court statement only if the witness is unavailable and the defendant has had a prior

---

[4] The State also argues that the deposition was admissible under Indiana Evidence Rule 804(b)(1), which provides the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> Testimony that:
>
> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>
> (B) is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Taylor argues that this rule was not asserted as a basis for admission of the statement. We may, however, affirm a trial court's hearsay ruling "on any legal basis apparent in the record." *Beverly v. State*, 801 N.E.2d 1254, 1259 (Ind. Ct. App. 2004), *trans. denied*. Regardless, L.D.'s statements were admissible under Rule 804(b)(5), and we need not address Rule 804(b)(1).

opportunity to cross-examine the witness." *Crawford*, 541 U.S. at 59. A defendant, however, may forfeit his right to confrontation where his own wrongdoing caused the declarant to be unavailable to testify at trial. *Scott*, 139 N.E.3d at 1153 (citing *Crawford*, 541 U.S. at 62). "In order for a defendant to have forfeited his confrontation rights by wrongdoing, the defendant must have had in mind the particular *purpose* of making the witness unavailable." *Id.* at 1154 (citing *Giles v. California*, 554 U.S. 353, 367 (2008)). "The burden of proof for showing forfeiture by wrongdoing is a preponderance of the evidence standard." *Id.*

[20] The State demonstrated by a preponderance of the evidence that Taylor's repeated calls to L.D. telling her not to attend the scheduled bench trials were designed to prevent L.D. from testifying against him. Due to Taylor's wrongdoing, he forfeited his right to confront L.D.'s statements. Accordingly, Taylor's Sixth Amendment rights were not violated by the admission of L.D.'s statements. *See, e.g.*, *id.* at 1155 (holding that "Scott's wrongdoing forfeited his right to confront Cook's statements to law enforcement and, as a result, his Sixth Amendment right to confrontation was not violated by the admission of Cook's prior statements at trial").

## C. Article 1, Section 13 of the Indiana Constitution

[21] Next, Taylor argues that the admission of L.D.'s statements violated his rights under Article 1, Section 13 of the Indiana Constitution. Article 1, Section 13 of the Indiana Constitution provides that "in all criminal prosecutions, the accused shall have the right to . . . meet the witnesses face to face. . . ." Like the

Sixth Amendment, the forfeiture by wrongdoing doctrine also applies to Article 1, Section 13 of the Indiana Constitution. *See Galloway v. State*, 188 N.E.3d 493, 499 (Ind. Ct. App. 2022) (holding that "we see no reason to differentiate between the federal and state constitutions regarding the forfeiture by wrongdoing doctrine"), *trans. denied*.

[22] Taylor's argument fails for the same reason that this argument under Indiana Evidence Rule 804(b)(5) and the Sixth Amendment failed. Taylor's wrongdoing forfeited his right to confront L.D.'s statements. Accordingly, Taylor's rights under Article 1, Section 13 of the Indiana Constitution were not violated.[5] *See id*. at 500 (holding that "Galloway's wrongdoing forfeited his right to confront Baker's statement to law enforcement and, as a result, his confrontation rights under the . . . Indiana Constitution were not violated by the admission of Baker's statement at trial").

## II. The evidence is sufficient to sustain Taylor's conviction for rape.

[23] Next, Taylor challenges the sufficiency of the evidence to support his rape conviction. Sufficiency of the evidence claims warrant a deferential standard of

---

[5] In *Galloway*, we noted that the Indiana Constitution guarantees "face to face" confrontation of witnesses, not declarants. 188 N.E.3d at 499. We also held that "the witnesses who recounted Baker's out-of-court statements was the detective who testified under oath and whom Galloway confronted face to face." *Id.* In his appellant's brief, Taylor focuses on the reasons for L.D.'s absence from the bench trial and makes no argument that he was denied "face to face" confrontation of the witnesses. In his reply brief, however, Taylor argues that he did not have the opportunity to confront L.D. face to face at her deposition. It is well-settled, however, that a party may not raise an argument for the first time in his reply brief. *See Akin v. Simons*, 180 N.E.3d 366, 375 (Ind. Ct. App. 2021) ("[T]he law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived."). Accordingly, this argument is waived.

review in which we "neither reweigh the evidence nor judge witness credibility, instead reserving those matters to the province of the jury." *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024). A conviction is supported by sufficient evidence if "there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* In conducting this review, we consider only the evidence that supports the jury's determination, not evidence that might undermine it. *Id.* We affirm the conviction "'unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'" *Sutton v. State*, 167 N.E.3d 800, 801 (Ind. Ct. App. 2021) (quoting *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007)).

[24] The trial court found Taylor guilty of rape, a Level 3 felony. Indiana Code Section 35-42-4-1(a) provides:

> [A] person who knowingly or intentionally has sexual intercourse with another person or knowingly or intentionally causes another person to perform or submit to other sexual conduct (as defined in IC 35-31.5-2-221.5) when:
>
> (1) the other person is compelled by force or imminent threat of force;

* * * * *

commits rape, a Level 3 felony.

"Other sexual conduct" includes an act involving "a sex organ of one (1) person and the mouth . . . of another person." Ind. Code § 35-31.5-2-221.5(1). Accordingly, the State was required to prove that Taylor knowingly or intentionally caused L.D. to perform other sexual conduct while L.D. was compelled by force or the imminent threat of force.

[25] On appeal, Taylor argues only that the State failed to prove that L.D. was compelled by force or the imminent threat of force. "The 'force necessary to sustain a rape conviction need not be physical, but . . . it may be inferred from the circumstances.'" *Morales v. State*, 227 N.E.3d 183, 189 (Ind. Ct. App. 2024) (quoting *Bryant v. State*, 644 N.E.2d 859, 860 (Ind. 1994)), *trans. denied*. "The presence or absence of force is determined from the victim's perspective, not the defendant's." *Id.* (citing *Tobias v. State*, 666 N.E.2d 68, 72 (Ind. 1996)). "'This test is subjective and looks to the victim's perception of the circumstances surrounding the incident in question.'" *Id.* (quoting *E.S. v. State*, 198 N.E.3d 701, 703 (Ind. Ct. App. 2022)).

[26] The State presented sufficient evidence that Taylor used physical force and verbal threats to coerce L.D. to perform oral sex. The evidence demonstrated that L.D. did not want to perform oral sex on Taylor, but L.D. did—so that Taylor would stop beating her. Taylor's argument to the contrary is merely a request that we reweigh the evidence, which we cannot do. The evidence is sufficient to sustain Taylor's conviction for rape, a Level 3 felony.

### III. The trial court failed to hold a hearing regarding the deprivation of Taylor's pretrial good time credit.

[27] Finally, Taylor challenges the trial court's denial of his good time credit. Pre-sentence jail time credit is a matter of statutory right, and trial courts generally have no discretion in awarding or denying such credit. *Jones v. State*, 269 N.E.3d 862, 869 (Ind. Ct. App. 2025).

[28] Indiana Code Section 35-50-6-3.1 provides that a defendant is entitled to good time credit for time spent in confinement awaiting trial or sentencing. Defendants imprisoned in a penal facility may be deprived of good time credit for a violation of one or more rules of the penal facility. Ind. Code § 35-50-6-5(a)(2). Indiana Code Section 35-50-6-5(b), however, provides:

> Before a person may be deprived of educational credit or good time credit, the person must be granted a hearing to determine the person's guilt or innocence and, if found guilty, whether deprivation of earned educational credit or good time credit is an appropriate disciplinary action for the violation. In connection with the hearing, the person is entitled to the procedural safeguards listed in section 4 of this chapter. The person may waive the person's right to the hearing.

[29] The State concedes that Taylor was entitled to a hearing before the trial court deprived him of pretrial good time credit. The State, thus, argues that we should remand for a hearing on this issue. Taylor, however, argues that because the statutory procedures were not followed, the State has waived the opportunity to seek deprivation of Taylor's pretrial good time credit.

[30]     We addressed a similar situation in *Harness v. State*, 246 N.E.3d 1271, 1276 (Ind. Ct. App. 2024), and held:

> [O]ur statutes require that, before a person may be deprived of pretrial home detention credit time, the person must, in accordance with Indiana Code Section 35-50-6-4, be given written notice of pretrial home detention violations, and a hearing must be held to determine whether deprivation of credit time is appropriate. Here, the State never gave written notice that Harness violated the conditions of his pretrial home detention by failing to pay fees, and no hearing was held on the matter. The statutory procedures for the deprivation of credit time, thus, were not followed in this case. *See Tumbleson v. State*, 706 N.E.2d 217, 218 (Ind. Ct. App. 1999) (holding that trial court erred in depriving defendant of good time credit, in part, because no hearing was held on the alleged violations).

> Because the State and the trial court did not follow the statutory procedures for the deprivation of credit time, the trial court erred in depriving Harness of pretrial credit time. Additionally, because the State never sought a hearing on the grounds that Harness violated the conditions of his home detention by failing to pay fees, the State has waived the opportunity to seek deprivation of Harness' pretrial credit time on this basis. *Cf. Clark v. State*, 958 N.E.2d 488, 495 (Ind. Ct. App. 2011) (holding that trial court erred by failing to dismiss untimely probation violation allegation). Accordingly, we reverse and remand with instructions that the trial court award Harness 245 days of accrued time and eighty-two days of good time credit for a total of 327 days.

Given our holding in *Harness*, we agree with Taylor that the State has waived its opportunity to object to Taylor's pretrial good time credit. Accordingly, we

reverse and remand with instructions that the trial court award Taylor pretrial good time credit.

## Conclusion

[31] The trial court properly admitted L.D.'s statements from her deposition and to Officer Nall, and the evidence is sufficient to sustain Taylor's conviction for rape. The State concedes, however, that the trial court was statutorily required to hold a hearing regarding the deprivation of Taylor's good time credit and failed to do so. And because the State did not request a hearing, the State has waived its right to object to pretrial good time credit. Accordingly, we affirm in part, reverse in part, and remand with instructions that the trial court award Taylor pretrial good time credit.

[32] Affirmed in part, reversed in part, and remanded with instructions.

Weissmann, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Jan B. Berg
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy Attorney General
Indianapolis, Indiana